UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NICHOLAS A. NAVARRETTE,<br><br>　　　　　Petitioner,<br>　v.<br>CALVIN JOHNSON, et al.,<br><br>　　　　　Respondents. | Case No. 2:20-cv-02061-APG-DJA<br><br>**ORDER**<br><br>(ECF No. 41) |

Petitioner Nicholas A. Navarrette, a Nevada state prisoner, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 11. The respondents move to dismiss the petition. ECF No. 41.

**I.　　Background**[1]

Navarrette challenges a 2013 conviction and sentence for murder with use of a deadly weapon, robbery, and first-degree kidnapping with use of a deadly weapon. ECF No. 12-11 at 2. The state district court sentenced Navarrette to life without parole in addition to a consecutive term of 12 to 240 months for the use of a deadly weapon for the murder conviction; 40 to 180 months for the robbery conviction to run concurrently with the sentence for the murder conviction; and 5 years to life for the first-degree kidnapping conviction in addition to 12 to 180 months for the use of a deadly weapon to run consecutively to the sentence for the robbery conviction. *Id*. at 3.

The Nevada Court of Appeals affirmed on appeal on April 15, 2015. ECF No. 12-12 at 88-98. Navarrette filed a motion to vacate or withdraw plea on August 5, 2014 and the state district court treated that as a post-conviction petition for writ of habeas corpus, which was denied on November 24, 2014. ECF No. 12-13 at 2-4, 31-35. Navarrette did not appeal that decision. Navarrette filed another post-conviction state habeas petition ("second post-conviction

---

[1] I make no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. I summarize the factual assertions solely as background to the issues presented in the case, and I do not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me. Any absence of mention of a specific piece of evidence or category of evidence does not signify that I have overlooked the evidence in considering Navarrette's claim.

state habeas petition") on October 7, 2015 and the state district court denied that on the merits despite argument that it was a successive petition. ECF No. 12-14 at 14-18, 28-38. The Nevada Court of Appeals affirmed the denial of the petition and remittitur issued on March 21, 2017. *Id.* at 43-48.

Navarrette filed a *pro se* motion to withdraw guilty plea on January 31, 2017, which the state district court denied for lack of jurisdiction. ECF No. 23-7 at 3. On appeal, the Supreme Court of Nevada reversed and remanded, instructing the state district court to treat the motion as a post-conviction habeas petition. ECF No. 23-15. Navarrette filed a third post-conviction state habeas petition on October 25, 2018 and amended state habeas petition on January 31, 2019. ECF Nos. 23-20, 23-26. The Nevada Court of Appeals affirmed denial of the third post-conviction state habeas petition, finding the petition untimely and successive. ECF Nos. 24-3, 12-15 at 185-89.

Navarrette initiated this federal habeas proceeding on November 9, 2020. ECF No. 1. Following appointment of counsel, Navarrette filed a counseled first amended petition on July 29, 2021. ECF No. 11. The respondents now move to dismiss his *pro se* and amended petitions as untimely. ECF No. 41. They further argue that Grounds I(B), III(A), III(C), VII, and VIII are unexhausted; Grounds VI, VII, and VIII are procedurally defaulted; and Grounds I, II, III(B), V, VII, VIII, and IX should be dismissed as not cognizable. *Id.* Navarrette argues he can overcome any procedural or timeliness bars because (1) he can demonstrate actual innocence, and (2) he is entitled to equitable tolling. ECF No. 45 at 2-8.

**II.     Discussion**

   **A. Timeliness**

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year limitation period for state prisoners to file a federal habeas petition under 28 U.S.C. § 2254. The one-year limitation period, *i.e.*, 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *Id.* § 2244(d)(1)(A). For a Nevada prisoner who pursues

a direct appeal, the conviction becomes final when the 90-day period for filing a petition for certiorari in the Supreme Court of the United States expires after a Nevada appellate court enters judgment or the Supreme Court of Nevada denies discretionary review. *See Harris v. Carter*, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005).

Here, the Nevada Court of Appeals issued affirmed on direct appeal on April 15, 2015. Thus, the time for Navarrette to file a petition for certiorari expired on July 14, 2015, and the AEDPA limitation period began running the following day.[2] Navarrette filed his second post-conviction state habeas petition on October 7, 2015, tolling the AEDPA clock. The AEDPA limitation period is tolled while a "properly filed" state post-conviction proceeding, or other collateral review, is pending. 28 U.S.C. § 2244(d)(2). As a result, 85 days elapsed between the finality of the judgment and the filing of the second state petition. The remaining 280 days of the AEDPA limitation period were statutorily tolled during the pendency of all proceedings related to the state petition. Tolling ended on March 21, 2017, when the remittitur issued for the order of affirmance by the Nevada Court of Appeals. The AEDPA clock restarted the following day and expired 280 days later on December 27, 2017. Navarrette filed another motion to withdraw his guilty plea (or a third post-conviction state habeas petition), which was denied as untimely and successive. An untimely state petition is not "properly filed" and thus does not toll the federal statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Therefore, without another basis for tolling or delayed accrual, the AEDPA deadline expired on December 27, 2017, and Navarrette's federal petition was filed nearly three years later on November 9, 2020. The petition is therefore time-barred unless tolling applies. Navarrette essentially concedes that the one-year limitation period expired before he filed his federal petition. He argues that the court should excuse his failure to timely file to prevent a miscarriage of justice because Navarrette did not have specific intent to commit first-degree murder. ECF No. 45 at 7-8. He also argues that he is entitled to equitable tolling because he

---

[2] Although Navarette moved to vacate or withdraw his plea (which was construed as a state habeas post-conviction petition) on August 5, 2014, the state district court denied that motion on November 24, 2014, before the AEDPA limitation period began to run.

3

pursued his rights diligently. *Id*. at 2-7.

### B. Actual Innocence

Demonstrating actual innocence is a narrow "gateway" by which a petitioner can obtain federal court consideration of habeas claims that are otherwise procedurally barred, including claims filed after the expiration of the federal limitation period. *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc) (A "credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits."); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. The narrow *Schlup* standard is satisfied only if the new, reliable evidence, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Id.* at 329.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggen*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). When conducting a *Schlup* gateway review, a court "must 'assess how reasonable jurors would react to the overall, newly supplemented record,' including all the evidence the petitioner now proffers." *Stewart v. Cate*, 757 F.3d 929, 938 (9th Cir. 2014) (quoting *Lee*, 653 F.3d at 945). The court's "function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* (quoting *House*, 547 U.S. at 538).

Navarrette asserts that he is actually innocent. He argues that he entered an *Alford* plea based on his trial counsel's advice, but had he proceeded to trial no reasonable juror would have found he maintained the requisite intent to find him guilty of first-degree murder beyond a reasonable doubt. ECF No. 45 at 11-12. Navarrette asserts that because he had no knowledge that the victim was alive, he did not have specific intent to commit first-degree murder. *Id*.

It is not clear that the actual innocence gateway applies to a case such as this involving a plea. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n. 9 (9th Cir. 2007) ("We are aware of the potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving guilty (or no contest) pleas."). Regardless, Navarrette has not made a convincing showing of actual innocence to overcome the timeliness bar. He does not cite any new evidence, but instead premises his actual innocence on "undisputed facts" that "Navarrette could not have harbored the specific intent required for a first degree murder conviction because he had no knowledge [the victim] was alive." ECF No. 45 at 8, 12. But he does not proffer any facts; nor does he explain how he would have presented at trial the theory that he did not have specific intent because he did not have knowledge that the victim was alive. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual innocence means factual innocence, not mere legal insufficiency.").

Police interviewed Navarrette and his co-defendant, Geoffrey Grove. ECF No. 12-1 at 36. Navarrette told police that he went to the victim's home, who was previously in a romantic relationship with Grove. *Id*. at 48. Navarrette told police that he placed a cloth in the victim's mouth and secured the cloth with a dog leash. *Id*. at 51. He admitted that out of the 20-minute strangulation, he applied pressure for about two minutes. *Id*. He described the victim as struggling and fighting during the strangulation and stated that "she had a very strong will to live." *Id*. During Grove's interview with police, he asserted that he and Navarrette put the victim's body in a car. ECF No. 12-19 at 183. Grove believed the victim was dead at this point, but Navarrette told Grove that he did not believe the victim was dead, gave Grove a gun, and told Grove, "you better do something." *Id*.

Navarrette has not made a credible showing that no reasonable juror would have found

him guilty beyond a reasonable doubt. He makes bare allegations of actual innocence and did not come forward with new reliable evidence. Navarrette fails to meet the demanding *Schlup* standard, so he has not made a viable claim that actual innocence allows him to bypass AEDPA's limitation period.

**C. Equitable Tolling**

The one-year limitation period is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace,* 544 U.S. at 418). Equitable tolling does not stop the limitation clock the way statutory tolling does.

"First, for a litigant to demonstrate 'he has been pursuing his rights diligently,' *Holland*, 560 U.S. at 649 [...], and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.) (en banc), cert. denied, 141 S. Ct. 878 (2020). "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.*

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653.

> In determining whether reasonable diligence was exercised courts shall consider the petitioner's overall level of care and caution in light of his or her particular circumstances and be guided by decisions made in other similar cases with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Smith*, 953 F.3d at 599 (internal punctuation and citations omitted).

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107

(9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065.  He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Navarrette argues that he endured extraordinary circumstances giving rise to delay in filing his federal petition because he did not have access to his file and did not have access to legal resources. ECF No. 45 at 6.  He asserts that although he requested a copy of his file after sentencing, his counsel did not provide it until late 2016. *Id*. at 5.  When the file was sent, the prison facility did not give it to him. *Id*.  Navarrette notes that the COVID-19 pandemic exacerbated difficulties in gaining access to his file and the law library. *Id*. at n.1.

The respondents argue that difficulty in obtaining the file and accessing the law library do not amount to extraordinary circumstances. ECF No. 52 at 3.  They further assert that Navarrette's counsel forwarded his file to him in September 2016, and Navarrette had the opportunity to appeal the prison's determination that the forwarded documents were unauthorized. *Id*. at 4.  In addition, Navarrette filed a *pro se* state habeas petition in October 2015, a motion to withdraw plea in January 2017, another *pro se* state habeas petition in October 2018, and an amendment to state petition in January 2019 without his file, showing that he had constructive knowledge of the documents in his file. *Id*.  As for access to the law library, the respondents argue that Navarrette set forth in his state habeas petition that he had access to the law library twice a week for two hours beginning in October 2016. *Id*. at 6.

Navarrette has not met the high threshold of demonstrating that extraordinary circumstances prevented him from litigating a federal habeas petition.  In his third post-conviction state habeas petition, Navarrette asserts that he was transferred to High Desert State Prison (HDSP) on October 4, 2016, where he was permitted only one to two hours of time in the law library twice a week subject to administrative approval. ECF No. 12-15 at 57. *See Ramirez v.*

*Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (holding that petitioner's stay in administrative segregation with limited access to the law library and a copier did not justify equitable tolling because it was neither "extraordinary" nor did it make it "impossible" for him to file his petition in a timely manner); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (rejecting argument that lack of access to library materials automatically qualifies as grounds for equitable tolling).

While the denial of access to legal files may in some circumstances constitute an "extraordinary circumstance" beyond a petitioner's control for purposes of equitable, the petitioner bears the burden of showing his own diligence and that the lack of access to his file caused the untimeliness. *See Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam); *see also Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 (9th Cir. 2009). It is not clear that Navarrette required his case file to pursue his habeas claims. Although prison officials ultimately withheld his file, his counsel forwarded the file to Navarrette in September 2016. ECF No. 12-15 at 39. Navarrette filed *pro se* state habeas petitions during the time he purports that he did not have access to the law library or his case file. The circumstances did not prevent him from drafting and sending documents to the state court to pursue his state habeas claims. As Navarrette had enough case materials to file multiple state habeas petitions and motions, there does not appear to be any legitimate basis for his nearly three-year delay in submitting his federal habeas petition. None of these circumstances rises to the level of extraordinary.

Navarrette also fails to show that he was reasonably diligent in pursuing his rights. Once he was transferred to HDSP, more than one year remained to file a timely federal habeas petition. He does not allege that he requested approval to access the law library during this time. He does not allege or provide documentation to show that he submitted to prison officials any grievance, inmate request forms, or complaints regarding lack of access to the law library. Similarly, from the time his counsel forwarded the case file in September 2016, more than one year remained to file a timely federal habeas petition. Although prison officials determined the mail was unauthorized, Navarrette has not demonstrated that he appealed the decision through the inmate grievance process. ECF No. 12-15 at 41. Accordingly, he has not demonstrated that he diligently attempted to remedy any extraordinary circumstance or diligently pursued his rights when free

from the circumstance. *See Smith v. Davis*, 953 F.3d at 599.

Navarrette's lack of access to the law library and his case file were not extraordinary circumstances that prevented timely filing of his federal petition. Further, Navarrette has not demonstrated reasonable diligence. Navarrette has failed to meet the burden of establishing that he is entitled to equitable tolling.

### D. Exhaustion and Cognizability

The respondents also argue that certain grounds are not exhausted, procedurally barred, or not cognizable in federal habeas corpus. I will not address these arguments because I am dismissing the action as a whole as untimely. When a district court concludes that a particular issue is dispositive, it need not "consider alternative reasons for dismissing the petition." *Cooper v. Neven*, 641 F.3d 322, 327–28 (9th Cir. 2011) (rejecting respondents' contention that the district court erred by proceeding with its procedural bar analysis before first examining whether petitioner's claims were untimely, and finding that the procedural bar analysis rendered the exhaustion issue moot).

## III. Certificate of Appealability

A district court is required to consider a certificate of appealability when it enters a final order adverse to a habeas petitioner. Fed. § 2254 R. 11(a); 9th Cir. R. 22-1(a). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where a district court denies relief on procedural grounds without reaching the underlying constitutional claim, the court applies a two-step inquiry to decide whether a certificate of appealability is appropriate. *Payton v. Davis*, 906 F.3d 812, 820 (9th Cir. 2018). A petitioner must show both that jurists of reason would find it debatable (1) "whether the petition states a valid claim of the denial of a constitutional right," and (2) "whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (simplified); *Payton*, 906 F.3d at 820 ("Both components must be met before [the Ninth Circuit] may entertain the appeal."). To meet the threshold inquiry, a petitioner has the burden of demonstrating that the issues are debatable among jurists of reason, that a court could resolve the

9

issues differently, or that the questions are adequate to deserve encouragement to proceed further. *See Allen v. Ornoski*, 435 F.3d 946, 950–951 (9th Cir. 2006).

A certificate of appealability is unwarranted in this case. I therefore deny Navarrette a certificate of appealability.

### IV. Conclusion

I THEREFORE ORDER:

1. The respondents' motion to dismiss (**ECF No. 41**) is **GRANTED in part.** The petitioner's first amended petition for writ of habeas corpus (ECF No. 11) is dismissed with prejudice as untimely. The Clerk shall enter judgment accordingly and close this case.

2. A certificate of appealability is DENIED as reasonable jurists would not find the court's decision debatable or wrong.

Dated: July 11, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE